FILED
2015 May-15  AM 11:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MITCHELL MCCLENDON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **2:14-cv-00150-AKK** |
| **CITY OF SUMITON, ALABAMA,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This lawsuit arises from an encounter Plaintiffs Mitchell McClendon, Billy

McClendon, and Cody Williams had with City of Sumiton, Alabama police

officers. Basically, Plaintiffs contend that the officers subjected them to excessive

force, false arrest, and violations of their rights under the Constitution and

Alabama law. As a result, Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 for

deliberate indifference (Count I), "Unlawful Arrest-Excessive Force" (Count II),

unlawful arrest (Count III), failure to prevent excessive and unreasonable force and

unlawful arrest, and deliberate indifference (Count IV), policymaker ratification

(Count V), inadequate training (Count VI), custom and practice municipal liability

(Count VII), and supervisor liability (Count VIII). Doc. 1. Plaintiffs also pursue

state law claims for assault and battery (Count IX), conspiracy (Count X), abuse of

process, malicious prosecution, and false imprisonment (Count XI), and respondeat superior (Count XII). *See* doc. 1. The court has for consideration the City of Sumiton, Alabama ("the City"), Chief of Police T.J. Burnett, Officer David Waid, Officer Patrick Ragsdale, and the Estate of Christopher Daugherty's[1] (collectively "Defendants") motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, motion for summary judgment, doc. 42, as well as Plaintiffs' motion to strike and motion to stay Defendants' motion for summary judgment, docs. 49, 50. These motions are fully briefed and ripe for review, *see* docs. 51, 53, 54.

For the reasons stated below, the motion to dismiss the claims against the City, Chief Burnett, Officer Waid, and Officer Ragsdale (whom Plaintiffs concede was not present during the incident at issue, *see* doc. 51 at 2) is due to be granted. As it relates to Officer Daugherty, the motion is also due to be granted with respect to the excessive force claim alleged by Williams and B. McClendon in Counts II and IX, the conspiracy claim (Count X), and the abuse of process claim alleged in Count XI. In all other respects, the motion is due to be denied. In other words, Plaintiffs may proceed solely with respect to their claims against the Estate of Officer Daugherty for § 1983 excessive force against M. McClendon and the unlawful arrest of all Plaintiffs, and state law assault and battery of M. McClendon,

---

[1] Officer Daugherty died sometime after the events in this case.

and malicious prosecution, and false imprisonment against all Plaintiffs. Finally, because the court finds that Defendants' motion is due to be granted in part on 12(b)(6) grounds, Plaintiffs' motion to strike and motion to stay, which were premised on Defendants' alternative request for summary judgment under Rule 56, are **MOOT**.

## I. Motion to Dismiss Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. Factual Background[2]

This action arises from an incident that occurred when M. McClendon purportedly suffered an epileptic seizure inside his home. Doc. 1 at ¶ 14. Williams, one of M. McClendon's companions, called 911 and requested medical assistance. *Id.* at ¶ 15. When Officer Daugherty, a Sumiton police officer, responded to the call, he found M. McClendon in the bathroom shower and exclaimed that M.

_____

[2] Although the court must accept all factual allegations as true on a motion to dismiss under Rule 12(b)(6), *see, e.g. Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000), "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 1951-52).

McClendon was "on drugs." *Id.* at ¶¶ 16-17. Officer Daugherty then "tried to force handcuffs on [M. McClendon] by hitting and beating him about the head and body and using a tazer on him." *Id.* at ¶ 17. M. McClendon allegedly "did not fight with Officer Daugherty[,] but tried to get away . . ," but "Officer Daugherty began kicking [him] about the face and body, using his tazer, and handcuffing him . . ." *Id.* As a result of the altercation, M. McClendon sustained a broken lip, lacerations, "bruises, contusions, and abrasions," and the exacerbation of a then-existing medical condition. *Id.* at ¶ 19.

During Officer Daugherty's encounter with M. McClendon, Williams and B. McClendon informed Officer Daugherty of M. McClendon's epileptic episode. *Id.* at 20. After asking Officer Daugherty not to handcuff M. McClendon, Williams and B. McClendon grabbed Officer Daugherty and tried to intervene. *Id.* at ¶ 20. A fight ensued, and Officer Daugherty called the dispatcher to ask for "some goddamn backup." *Id.* at ¶ 21. Eventually, several emergency medical technicians arrived. *Id.* at ¶ 24. After the paramedics transported M. McClendon to U.A.B. hospital, Officer Waid arrived and, along with Officer Daugherty, arrested Williams and B. McClendon for "obstruct[ion of] government operations," and Officer Daugherty charged M. McClendon with assault in the second degree. *Id.* at ¶¶ 24-25, 27, 29. The City eventually dismissed all charges. *Id.* at ¶¶ 27, 29.

# IV. ANALYSIS

Defendants raise multiple grounds in support of their motion to dismiss, which the court will address below, beginning with the claims against the City in Section A, followed by the claims against Chief Burnett in Section B, and finally, the claims against Officer Daugherty and Officer Waid in Section C.

## A. Claims against the City (Counts I, V, VI, VII and XII)[3]

The § 1983 claims against the City consist of (1) deliberate indifference (Count I), (2) policymaker ratification (Count V), (3) inadequate training (Count VI), and (4) "custom and practice liability" (Count VII). *See* doc. 1. Like Plaintiffs' state law claim, these claims are also due to be dismissed.

### 1. Deliberate Indifference, Policymaker Ratification and "Custom and Practice Liability" Claims (Counts I, V, and VII)

To hold a municipality liable for a constitutional deprivation under § 1983, a plaintiff must establish that the officers committed the violation pursuant to a governmental "policy" or "custom." *Griffin v. City of Opa-Loka*, 261 F.3d 1295, 1307 (11th Cir. 2001). Consequently, a plaintiff must plead specific facts to "identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through repeated acts of a final

---

[3] Count XII – a respondeat superior claim – is the only state law claim against the City, and is due to be dismissed because a municipality cannot be vicariously liable for the intentional torts of its agents under Alabama law. *See* Ala. Code § 11-47-190; *Cremeens v. City of Montgomery*, 779 So. 2d 1190, 1201 (Ala. 2000).

policy maker for the [municipality]." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). Relevant here, when a plaintiff alleges that a municipality has adopted a policy of deliberate indifference, *see* doc. 1 at 9-10, 15, the plaintiff must plead facts indicating that the municipality had some knowledge of the risk of constitutional violations. *See Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403-04 (1997) ("'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). Next, to show ratification, the plaintiff "must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis." *Garvie v. City of Ft. Walton Beach, Fla.*, 366 F.3d 1186, 1189 (11th Cir. 2004).

Plaintiffs failed to make the relevant showings here. Instead, to support their deliberate indifference claim, Plaintiffs rely solely on legal buzzwords that are devoid of any specific factual allegations. *See* doc. 1 at 9-10 ("[The City] had an official policy of deliberate difference to the acts [] of the above named Defendants, and ratified, approved, condoned [,] [and] failed to investigate the excessive use of force, false arrest, and malicious prosecution of the Plaintiffs); *id.* at 15 ("The law enforcement policymaker of [the City] . . . either approved or was deliberately indifferent to the inadequate training [of police officers]"). Likewise, the policymaker ratification and "custom and policy liability" claims provide no

particularized factual basis for the assertion that the City, through Chief Burnett, ratified the officers' conduct. *See id.* at 11-12. Such conclusory allegations are insufficient to support a claim against the City for deliberate indifference, ratification, or purported "custom and policy liability." *See Grider v. Cook*, 522 Fed. App'x 544, 547-48 (11th Cir. 2013) ("plaintiff did not provide any specific facts about any policy or custom that resulted in his alleged constitutional deprivation"); *Harvey v. City of Stuart*, 296 Fed. App'x. 824, 826 (11th Cir. 2008) ("[C]omplaints in § 1983 cases must now 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" (quoting *Bryson v. Gonzalez*, 534 F.3d 1282 (10th Cir. 2008))). Accordingly, these claims are also due to be dismissed against the City.

### 2. Inadequate Training Claim (Count VI)

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983[.]" *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). However, a "municipality's culpability for the deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further

removed from the constitutional violation, than was the policy in *Monell* [*v.*

*Department of Social Services of the City of New York*, 436 U.S. 658 (1978)]")).

To sustain this claim, Plaintiffs must plead facts showing "that it was <u>so</u>

predictable that failing to train the [officers] amounted to a <u>conscious disregard</u> for

[their] constitutional rights." *Id.* at 1365 (emphasis in original). Again, however,

Plaintiffs have alleged only threadbare recitals of the cause of action, and failed to

allege any facts suggesting that the City's failure to train its officers in the areas

Plaintiffs indicated amounted to a "conscious disregard" to their rights. *See* doc. 1

at 13-14. Therefore, this claim is also due to be dismissed.

### B. Claims against Chief Burnett

Plaintiffs allege only federal claims against Chief Burnett. Specifically, in

Count I, Plaintiffs contend that Chief Burnett, as a policymaker for the City,

adopted an official policy of deliberate indifference to the actions of the defendant

officers. *See* doc. 1 at 9-10. Next, in Count V, the policy maker ratification count,

Plaintiffs allege that Chief Burnett facilitated the officers' conduct by "creating

customs, policies, and practices under which such unconstitutional practices

occurred, or allowed the continuation of the unconstitutional practices to

continue," and that, "after being informed of the violations of Plaintiffs[']

constitutional rights, [he] failed to take reasonable steps to remedy the wrong, and

therefore approved it, ratified it, condoned it, or was deliberately indifferent to it."

*Id.* at 9-10, 15. Both claims are due to be dismissed because, first, as to Count V, "[i]t is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Rather, a plaintiff must establish that each supervisory defendant, by their own conduct, violated the Constitution. *Iqbal*, 556 U.S. at 676. Put differently, a plaintiff must plead facts that support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from so doing." *Keating*, 598 F.3d at 762. Here, Plaintiffs failed to allege any facts that would allow the court to draw such an inference. In fact, Plaintiffs do not allege any facts, other than legalistic boilerplate, indicating that Chief Burnett had any involvement with the incident at issue in this case, or took any action indicating that he "approved [], condoned [], or was deliberately indifferent to . . ." any purported constitutional violations. *See* doc. 1. Consequently, the policy maker supervisory ratification (Count V) claims against Chief Burnett are due to be dismissed.

Second, as to Count I, to sustain their deliberate indifference claim, Plaintiffs must show that Chief Burnett had a "subjective awareness of a substantial risk of serious harm to the [Plaintiffs]" and failed to act. *Goodman v. Kimbrough*, 718 F.3d 1325, 1333-34 (11th Cir. 2013); *see also Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) ("A Fourteenth Amendment violation occurs

when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."). Plaintiffs, however, do not allege any facts that plausibly make such a claim, and again rely solely on boilerplate language. In light of the failure to plead facts suggesting that Chief Burnett actually possessed awareness of the risk of constitutional violations, *see generally* doc. 1 at 9-10, the deliberate indifference claim also fails.

### C. Claims against Officers Daugherty and Waid

Plaintiffs assert § 1983 claims against Officers Daugherty and Wade for violations of the Fourth Amendment by (1) subjecting them to excessive force and an unlawful arrest (Count II), (2) arresting them without probable cause (Count III), and for failure to prevent excessive and unreasonable use of force and unlawful arrest against Officer Waid individually (Count IV). *Id.* at 11-12. Plaintiffs also assert state law claims against both officers for (1) assault and battery, (2) conspiracy, and (3) abuse of process, malicious prosecution, and false imprisonment (Counts IX, X, and XI, respectively). *See* doc. 1. Defendants contend that Plaintiffs have either failed to allege sufficient factual matter for each claim, or that each officer is entitled to qualified immunity for the federal claims,[4]

---

[4] "Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Arrests by police

and statutory and/or state agent immunity for the state law claims. Doc. 42 at 18.

The court will address each claim in turn.

### 1. Unlawful Arrest and Excessive Force Claim (Count II) [5]

The court can dispose of the excessive force claims against Officer Waid in

short order because the allegations against him consist of boilerplate language that

is devoid of any factual allegations. *See* doc. 1 at ¶ 25 (alleging that Officer Waid

"assaulted and used excessive force on Williams and B. McClendon . . ."). Such

pleadings are insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Alternatively, the claims against Officer Waid fail because of qualified immunity.

According to Plaintiffs, Officer Waid used excessive force against Williams and B.

McClendon when Officer Waid responded to Officer Daugherty's call for backup

during his struggle with Williams and B. McClendon in his attempt to subdue M.

McClendon. Doc. 1 at ¶¶ 18, 21. Because "the right to make an arrest . . .

necessarily carries with it the right to use some degree of physical coercion . . . to

effect it," *see Graham* 490 U.S. at 396, especially where, as here, Officer Waid

---

officers fall within the discretionary authority function. *See, e.g. Lee v. Ferraro*,
284 F.3d 1188, 1194 (11th Cir. 2002) ("there can be no doubt that [the officer] was
acting in his discretionary authority when he arrested [the plaintiff].").

[5] Plaintiffs mistakenly mention "Unlawful Arrest" in the title of Count II, in which
their sole allegation consists of excessive force: "Defendants Officer Daugherty,
Officer Waid, and Ragsdale Penny used unreasonable force against Plaintiffs as
above described without reason and justification." Doc. 1 at ¶¶ 50 – 56. The court
assumes also that the inclusion of "Penny," who is not a named defendant and is
not mentioned in the complaint's statement of facts, is in error.

responded to a fight between at least two adults and a police officer, the court finds that Plaintiffs have failed to support their Fourth Amendment claim by alleging facts indicating that Officer Waid acted unreasonably under the circumstances. *See Kesinger*, 381 F.3d at 1249. Therefore, the § 1983 excessive force claims against Officer Waid are due to be dismissed. *See Ferraro*, 284 F.3d at 1194.

Likewise, because B. McClendon and Williams allege only that "Officer Daugherty assaulted and used excessive force on [them]" and offer no other specifics, *see* doc. 1 at ¶ 25, their excessive force claim against Officer Daugherty is also due to be dismissed. However, with respect to the excessive force claim by M. McClendon, Plaintiffs have alleged sufficient factual matter through their contention that Officer Daugherty "tried to force handcuffs on M. McClendon by hitting and beating him . . . and using a tazer" on two separate occasions while M. McClendon was purportedly experiencing an epileptic seizure. *See* doc. 1 at ¶ 17. As a result, the court must address whether Officer Daugherty can assert qualified immunity for the alleged violation of M. McClendon's constitutional rights. [6] *See Marsh*, 268 F.3d at 1030 n.8.

_____

[6] Defendants also contend that Officer Daugherty was rendering medical aid and that the force he used falls outside the scope of the Fourth Amendment. Doc. 54 at 13. Although there is Eleventh Circuit precedent holding that police officers perform a "community caretaking function" that can provide an exception to the Fourth Amendment's warrant requirements, *see, e.g. United States v. McGough*, 412 F.3d 1232, 1233 (11th Cir. 2005), Defendants have "cited no case, and none

When determining whether a police officer carrying out a discretionary function is entitled to qualified immunity, the court applies a two part test. "First, viewing evidence in the light most favorable to [the plaintiff], he must show that the officer[] violated a constitutional right." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Next, "[i]f such a violation occurred, then [the court] must determine if that right was clearly established at the time of the incident." *Id.* Applying this test to the facts here, the court notes that Plaintiffs allege that Officer Daugherty attacked M. McClendon during M. McClendon's epileptic seizure, that M. McClendon offered no resistance, and that Officer Daugherty kicked, hit, and used a stun gun on M. McClendon. Taking these allegations as true, the court cannot find that Officer Daugherty responded reasonably under the circumstances. Doc. 1 at ¶ 17. As courts within and outside this Circuit have consistently held, the use of violent force against a subject who is experiencing a medical event and who purportedly poses no threat to himself or others is unconstitutionally unreasonable. *See, e.g. Mercado*, 407 F.3d at 1158 (officer acted unreasonably when he fired a sage gun at plaintiff, who was suicidal but otherwise not a threat to himself or police); *Aldaba v. Pickens*, 777 F.3d 1148, 1160-61 (10th Cir., 2015) (officers acted unreasonably

---

has been found, that provides that the community caretaker function permits the use of excessive force." *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1251 (M.D. Ala. 2010).

when they used stun guns to subdue an agitated hospital patient who was not

threatening himself or others); *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir.

2001) (officers acted unreasonably when shooting plaintiff, who "had lost control

of himself" and was "screaming and banging on the walls of his house," with a

beanbag gun.).Therefore, drawing all reasonable inference in Plaintiffs' favor, *see*

*Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010), the court finds that

Plaintiffs have alleged a plausible violation of the Constitution.[7]

The next step in the qualified immunity analysis requires the court to

determine whether Officer Daugherty allegedly violated a clearly established right.

*See, e.g. Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th

Cir. 2009) (internal citations omitted). This inquiry is easy at this juncture because

courts within the Eleventh Circuit "have repeatedly held that police officers cannot

use force that is 'wholly unnecessary to any legitimate law enforcement purpose.'"

*Mercado*, 407 F.3d at 1160 (citing *Ferraro*, 284 F.3d at 1199 (holding that

slamming a handcuffed arrestee's head against the vehicle violated the Fourth

Amendment)); *see also Slicker v. Jackson*, 215 F.3d 1225, 1227 (11th Cir. 2002)

(holding that kicking an arrestee who is already in handcuffs violates the Fourth

---

[7] Additionally, Defendants contend that Officer Daugherty applied a minimal
amount of force and, therefore, under the de minimis force doctrine, is entitled to
qualified immunity. *See Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).
Plaintiffs' allegations that Officer Daugherty beat M. McClendon, used a stun gun,
and kicked him belie this contention. *See doc. 1 at 5-6.*

Amendment); *Priester v. City of Riviera Beach*, 208 F.3d 919, 926-27 (11th Cir. 2000) (holding that allowing a police dog to attack an incapacitated arrestee violates the Fourth Amendment). Taking Plaintiffs' allegations as true, as it must on a motion to dismiss, the court holds that purportedly kicking, hitting, and using a stun gun on a citizen in need of medical attention lacks any legitimate law enforcement purpose, and, as a result, will deny the motion to dismiss M. McClendon's excessive force claim against Officer Daugherty's estate.

### 2. Unlawful Arrest Claim (Count III)

Defendants contend next that Plaintiffs failed to allege facts suggesting that Officers Waid and Daugherty lacked probable cause to arrest them. *See* doc. 42 at 24-26. Probable cause is an absolute bar to a false arrest claim, *see Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998), and "in cases involving arrests or warrantless searches and seizures, law enforcement officers are entitled to qualified immunity if they had even arguable probable cause," *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (citation omitted).

### a. Unlawful Arrest Claim against Officer Waid

As an initial matter, because Plaintiffs allege that Officer Waid arrived after paramedics "transported [M. McClendon] to U.A.B. hospital," and failed to allege that Officer Waid actually participated in M. McClendon's arrest, M. McClendon's unlawful arrest claim against Officer Waid is due to be dismissed. Dismissal is also warranted on Williams and B. McClendon's claim because, as alleged, Officer Waid had probable cause to arrest both for obstructing government operations.[8] Williams and B. McClendon contend that they fought with Officer Daugherty in an attempt to stop him from subduing M. McClendon, and that Officer Waid subsequently responded to Officer Daugherty's call for backup during the fight. Based on these facts, a reasonable officer responding to a call for backup and, who, after arriving on the scene, observed Williams and B. McClendon fighting with a fellow police officer, would believe that probable cause existed to arrest Williams and B. McClendon. Accordingly, the motion to dismiss the unlawful arrest claim against Officer Waid is due to be granted.

### b. Unlawful Arrest Claim against Officer Daugherty

---

[8] "A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he . . . [i]ntentionally obstructs, impairs or hinders the administration of law or other governmental function . . ." Ala. Code § 13A-10-2.

Plaintiffs claim that Officer Daugherty unlawfully arrested M. McClendon for assault and battery, and Williams and B. McClendon for obstruction of government operations. Having reviewed the complaint, and taking Plaintiffs' allegations as true, the court concludes that Defendants have failed to establish that Officer Daugherty is entitled to qualified immunity on either arrest. First, because obstruction of government operations does "not apply to illegal action by a public servant in performing an unauthorized function," Ala. Code § 13A-10-2 commentary, the qualified immunity analysis on the arrest of B. McClendon and Williams hinges on Officer Daugherty's liability on the claims of excessive force against M. McClendon. *See* Ala. Code § 13A-10-1 (defining a "governmental function" as "[a]ny activity which a public servant is legally authorized to undertake on behalf of a government."); *see also Kleinschnitz v. Phares*, No. 1:13-cv-0209-MEF, 2013 WL 5797621 at *4 (M.D. Ala. Oct. 28, 2013) (holding that "the public servant must be legally authorized to undertake the action in question in order for interference to constitute obstruction."). Consequently, in light of the court's determination that Plaintiffs have alleged sufficient facts to state a claim that Officer Daugherty used excessive force unjustifiably against M. McClendon, *see supra* at 13-16, and because he purportedly arrested Williams and B. McClendon for trying to intervene in the unauthorized use of force against M. McClendon, the court finds that B. McClendon and Williams' claim that Officer

18

Daugherty "lacked any reasonable basis upon which to [arrest them] for

Obstruction of Government Operations" is plausible. *See* Ala. Code. § 13A-10-1.

Similarly, the motion to dismiss the unlawful arrest claim of M. McClendon

also fails. In support of their motion, Defendants contend that the charge against

M. McClendon "arose from the undisputed altercation that arose after [Officer]

Daugherty responded to a 911 call seeking assistance for a medical emergency, and

while he was attempting to bring M. McClendon under control." Doc. 42 at 25.

However, the "undisputed altercation" characterization is inaccurate. In actuality,

Plaintiffs allege that, although M. McClendon tried to "get away" from Officer

Daugherty, M. McClendon "did not fight with" Officer Daugherty, doc. 1 at ¶ 17,

and that M. McClendon "tried to prevent [Officer] Daugherty from beating,

kicking, and putting handcuffs on him," *id.* at ¶ 18. The court declines to infer, as

Defendants request, that M. McClendon's attempt to prevent Officer Daugherty's

use of force, as alleged in paragraph 18 of the complaint, indicates M. McClendon

actually resisted arrest and intended to injure Officer Daugherty. Instead, the court

reminds Defendants that it must construe all reasonable inferences in favor of

Plaintiffs at this juncture, *see Keating* 598 F.3d at 762, and that "Alabama law

gives a citizen the right to use force to resist an unlawful arrest . . . [and] permits a

person to use reasonable force to defend himself from what he reasonably believes

to be the use or imminent use of unlawful force." *Morris v. Town of Lexington,*

*Alabama*, 748 F.3d 1316, 1325 (11th Cir. 2014); *see also Telfare v. City of Huntsville*, 841 So. 2d 1222, 1229 (Ala. 2002) ("The law is clear that, to a limited degree, a party is justified in attempting to resist an unlawful arrest. A party may use reasonable force to extricate himself from an unlawful arrest." (internal citations omitted)). Consequently, based on the allegation that Officer Daugherty kicked, beat, and used a stun gun on M. McClendon, even though M. McClendon purportedly did not fight back, the court finds that no arguable probable cause existed to arrest M. McClendon. Accordingly, the motion to dismiss the unlawful arrest claims against the Estate of Officer Daugherty is due to be denied.

   *3. Failure to Prevent Excessive Force and Failure to Prevent Unlawful Arrest against Officer Waid (Count IV)*

   The excessive force claim against Officer Waid, which is premised on his purported failure to intervene and stop Officer Daugherty, fails for several reasons. First, because Officer Waid arrived after paramedics transported M. McClendon to the hospital, M. McClendon has no basis to hold him liable. *See Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) ("[I]n order for an officer to be liable for failing to stop police brutality, the officer must be in a position to intervene."). Second, Williams and B. McClendon's claim against Officer Waid also fails because, as the court has previously explained, *see supra* at 13, the Plaintiffs' allegation that Officer Daugherty used excessive force against them is not supported by factual allegations. An officer is simply not liable for failing to

20

intervene on an alleged assault that Plaintiffs failed to plead with sufficiency. *See,*
*e.g. Smith v. Ferrell*, No. 09-0588-CG-C, 2010 WL 3271239 *2 (S.D. Ala. July 21,
2010) ("Plaintiff cannot [sustain his failure to intervene claim] because the
underlying excessive force claims were determined not to have resulted in a
deprivation of a constitutional right . . ."), *adopted by* No. 09-0588-CG-C,
2010WL3271243 (S.D. Ala. Aug. 16, 2010); *see also Mann v. Taser Intern., Inc.*,
588 F.3d 1291, 1208 (11th Cir. 2009). Alternatively, the claim fails also because
Williams and McClendon failed to plead the necessary facts to support their
contentions. For example, Officer Waid's liability for failure to prevent an
unlawful arrest depends "on both the degree of participation in the arrest and the
amount of information available to [him] . . . , because a non-arresting officer does
not have a duty to investigate the basis of another officer's arrest." *Wilkerson v.*
*Seymour*, 736 F.3d 974, 980 (11th Cir. 2013). Yet, B. McClendon and Williams
allege only that Officer Waid arrived and assisted in their arrest in response to a
call by Officer Daugherty for "some goddamn backup" due to the struggle with
Williams and B. McClendon. Doc. 1 at ¶ 22.  Because Officer Waid's assistance
was based on Officer Daugherty's representations, and he had no duty to
investigate the basis of Officer Daugherty's arrest of Williams and B. McClendon,
*see Wilkerson*, 736 F.3d at 980, Officer Waid did not possess the requisite
knowledge that Officer Daugherty purportedly lacked probable cause to arrest

21

Williams and B. McClendon. For all these reasons, the failure to prevent excessive force and unlawful arrest claim against Officer Waid is due to be dismissed.

To summarize, all of the federal claims against Officer Waid are due to be dismissed. The federal claims against Officer Daugherty's estate are dismissed in part, and Plaintiffs may pursue only their unlawful arrest claim, and M. McClendon's excessive force claim.

### 4. State Law Claims against Officer Daugherty and Officer Waid

In Counts IX, X, and XI, Plaintiffs assert state law claims for assault and battery, conspiracy, and abuse of process, malicious prosecution, and false imprisonment, respectively, against Officers Waid and Daugherty. *See* doc. 1 at 16-18. For the reasons outlined below, the state claims against Officer Waid are due to be dismissed, as are the abuse of process and conspiracy claims by all Plaintiffs, and Williams and B. McClendon's assault and battery claim against Officer Daugherty.

### a. Assault and Battery (Count IX)

Because excessive force during an arrest falls within the ambit of a state law assault and battery claim, *see Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995), for the same reasons outlined with respect to the § 1983 excessive force claim, Plaintiffs' allegations also do not support a claim against Officer Waid for the assault and battery of any Plaintiff, or Officer Daugherty for the assault and

battery of Williams and B. McClendon. *See supra* at 12-13. As to M. McClendon's assault and battery claim against Officer Daugherty's estate, as an initial matter, the court rejects Defendants' contention that Plaintiffs failed to allege sufficient factual matter to support this claim. *See* doc. 42 at 30. To the contrary, the allegations that Officer Daugherty attacked M. McClendon, who was purportedly not fighting back and experiencing a medical emergency, are sufficient to support the assault and battery claim. *See Franklin*, 670 So. 2d at 852-53 ("In making an arrest, a police officer may use reasonable force and may be held liable only if more force is used than is necessary to effectuate the arrest").

Consequently, the court must address whether Officer Daugherty is entitled to statutory and/or state agent immunity. This determination is based on the application of the test enumerated in *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000). *Brown v. City of Huntsville, Alabama*, 608 F.3d 724, 741 (11th Cir. 2010) (citing *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005)). Under the *Cranman* framework, "[Officer Daugherty] initially bears the burden of demonstrating that he was acting in a function that would entitle [him] to immunity." *Id.* (citing *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006)). "If [Officer Daugherty] makes such a showing, the burden then shifts [to Plaintiffs] to show that [Officer Daugherty] acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority." *Ex. Parte Estate of Reynolds*,

946 So. 2d at 452. Officer Daugherty easily satisfies the first part of the framework because "[a]s a police officer, [he] qualifies as a peace officer for purposes of [discretionary-function immunity]," *Borders v. City of Huntsville*, 875 So. 2d 1168, 1178 (Ala. 2003), and can show that he was "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons . . ," *Ex parte Cranman*, 792 So. 2d at 405; *see also* doc. 1 at ¶ 16 (Plaintiffs concede that Officer Daugherty was a police officer responding to a 911 call). Therefore, the burden shifts to Plaintiffs to show that Officer Daugherty acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority. A reasonable fact finder could make such a determination in light of Plaintiffs' allegations that Officer Daugherty attacked M. McClendon without provocation during an epileptic seizure. *See supra* at 14-18. Accordingly, at this juncture, M. McClendon's assault and battery claim against the Estate of Officer Daugherty may proceed.

### b. Conspiracy (Count X)

Plaintiffs allege that Officers Daugherty and Waid were employees of the City at the time of the alleged conspiracy, doc. 1 at ¶¶ 10-11, which consisted of filing charges and testifying against Plaintiffs, *see id.* at ¶¶ 25, 28, 89. Based on these allegations, Officers Daugherty and Waid were acting within the scope of their employment, *see Grider*, 618 F.3d at 1261, and, as such, were legally

24

incapable of conspiring with one another, *see McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) ("a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."); *see also Grider*, 618 F.3d at 1261 (11th Cir. 2010) (applying the intracorporate conspiracy doctrine to an alleged conspiracy against agents of a municipality); *M and F Bank v. First American Title Ins. Co.*, 144 So. 3d 222, 234 (Ala. 2013) (recognizing that the intracorporate conspiracy doctrine defeats a conspiracy claim in the state law context). Accordingly, the motion to dismiss the conspiracy claim is due to be granted.

### c. Abuse of Process, False Imprisonment, and Malicious Prosecution (Count XI)

The abuse of process claims are due to be dismissed against both officers because Plaintiffs have not alleged facts suggesting that Officers Daugherty and Waid possessed an ulterior motive when testifying against them. *See Preskitt v. Lyons*, 865 So. 2d 424, 430 (Ala. 2003) (abuse of process includes "the existence of an ulterior purpose"); *see also C.C. and J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998) ("The tort of abuse of process . . . is concerned with the wrongful use of process . . .") (internal quotation marks omitted).

Next, with respect to Officer Waid only, the false imprisonment claim is also due to be dismissed because he was not involved in the arrest of M. McClendon,

and, as noted above, he possessed arguable probable cause to arrest Williams and

B. McClendon for obstruction of government operations. *See supra* at 17; *Upshaw*

*v. McArdle*, 650 So. 2d 875 (Ala. 1994) (probable cause to arrest is a bar to a state

false imprisonment claim); *see also White v. City of Birmingham*, Nos. 2:13-cv-

00099-KOB, 2:13-cv-01006-KOB, 2015 WL 1418891 *33 (N. D. Ala., Mar. 27,

2015) ("False imprisonment does not occur when an officer detains a party and

probable cause exists for the detention.") (citing *Walker v. City of Huntsville*, 62

So. 3d 474, 492 (Ala. 2010)). Likewise, because the presence of probable cause is

a bar to malicious prosecution, *see Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831-

31 (Ala. 1999), the claim against Officer Waid for malicious prosecution is also

due to be dismissed, *see supra* at 17.

The court turns now to the malicious prosecution and false imprisonment

claims against Officer Daugherty, and rejects Defendants' initial contention that

Plaintiffs failed to allege sufficient factual matter to support these two claims. To

the contrary, the allegations are sufficient to state false imprisonment and

malicious prosecution claims because both causes of action are based on an

officer's lack of probable cause to arrest or file charges against a plaintiff. Taking

these claims separately, the court notes that false imprisonment, which is "the

unlawful detention of the person of another for any length of time whereby he is

deprived of his personal liberty," Ala. Code § 6-5-170, utilizes the same analysis as

§ 1983 unlawful arrest claims. In that respect, "[b]ecause the Court has already found there is evidence sufficient reasonably to suggest that no probable cause existed to arrest [Plaintiffs] . . . for purposes of [their] Fourth Amendment claim . . . [it finds also that] no probable cause existed for purposes of [their] state law claim for false imprisonment or arrest." *Walker v. Briley*, 140 F. Supp. 2d 1249, 1262 (N.D. Ala. 2001); *see also Harris v. City of Prattville*, No. 2:07-cv-349-WHA, 2008 WL 2704684 *16 (N.D. Ala. July 7, 2008) ("If a police officer has no arguable probable cause under the Fourth Amendment to arrest a plaintiff without a warrant . . . no probable cause exists for [the] purpose of plaintiff's state law claim of false imprisonment."). Next, as to the malicious prosecution claim, Plaintiffs allege that Officer Daugherty arrested a purportedly docile M. McClendon for assault in the second degree, and arrested Williams and B. McClendon for obstruction of governmental operations, when they allegedly only tried to stop Officer Daugherty's use of excessive force. These allegations, along with the contention that the City ultimately dismissed the charges, are sufficient to state a claim against Officer Daugherty for malicious prosecution.[9]

---

[9] "Malice in a malicious prosecution action has been defined as whatever is done willfully and purposely, whether the motive is to [injure the] accused . . . or through mere wantonness or carelessness, if at the same time wrong and unlawful within the knowledge of the actor . . . *[and] may be inferred from the want of probable cause . . .*" *Willis v. Parker*, 814 So. 2d 875, 864-65 (Ala. 2001) (emphasis added).

In light of the court's finding that Plaintiffs adequately pleaded their false arrest and malicious prosecution claims, the court must address whether Officer Daugherty is entitled to statutory and state agent immunity. Again, Officer Daugherty easily satisfies the first prong of the *Cranman* framework. *See supra* at 23-24. Consequently, the burden shifts to Plaintiffs to show that Officer Daugherty acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority. *Ex parte Estate of Reynolds*, 946 So. 2d at 452. Plaintiffs can make this showing because a reasonable fact finder could determine that, under the alleged facts, Officer Daugherty lacked probable cause to arrest them, and, as such, acted beyond his authority. *See supra* at 18-20. Therefore, Officer Daugherty is not entitled to state agent or statutory immunity on the malicious prosecution and false imprisonment claims.

To summarize, all of the state law claims against Officer Waid are due to be dismissed. The state law claims against Officer Daugherty's estate are dismissed in part, and Plaintiffs may pursue only their false imprisonment and malicious prosecution claims, and M. McClendon's assault and battery claim.

## VI. CONCLUSION

For all these reasons, the motion to dismiss all claims against the City, Chief Burnett, and Officer Waid is due to be granted. The motion is due to be granted, in

part, as to the Estate of Officer Daugherty. The court will enter a separate order consistent with this opinion.

**DONE** the 15th day of May, 2015.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE